AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas



United States Courts
Southern District of Texas
FILED
SEP - 8 2016
David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Lalo Buddy PEREZ; Michael Anthony PATRAN; Pauline Lucy RIVAS; and Robert Ashleigh WHITTEN | ) ) ) ) | Case No. H16-1307M |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  September 6, 2016  in the county of  Montgomery  in the
Southern District of  Texas , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. §§ 846, 841(a)(1) | Conspiracy to possess with the intent to distribute more than 5 kilograms of cocaine, a schedule II controlled substance (18 kilograms) |
| Title 18 U.S.C. §§ 1956 | Laundering of Monetary Instruments ($937,238.00 in USC) |
| 18 U.S.C. §§ 924(c)(1)(A) | Possession of a Firearm in the Furtherance of a Crime of Violence or Drug Trafficking Crime (as to PEREZ and PATRAN only) |

This criminal complaint is based on these facts:

See Affidavit in Support of Criminal Comlaint incorporated by reference herein.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

James A. Emmerson, Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 09/08/2016

_____
*Judge's signature*

City and state:  Houston, Texas    Nancy K. Johnson, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Your Affiant, James Emmerson, being duly sworn, deposes and states as follows:

I am a Task Force Officer ("TFO"), a deputized federal agent of the United States Drug Enforcement Administration ("DEA") within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in 18 U.S.C. § 2516. Pursuant to the authority granted to the Attorney General by Public Law 99-570, Section 1869, and delegated to the DEA Administrator by Title 28, Code of Federal Regulations, Subpart R. Section 0.100 et seq., I am authorized to exercise the powers of enforcement personnel set forth in U.S.C. 21 § 878.

I am currently employed by the Galveston Police Department as a Texas Peace Officer. I have been employed by the Galveston Police Department since July 2003, and have been assigned as a Task Force Officer to the DEA Galveston Resident Office from June 2010 to present. I have received special training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code and in Chapter 481 of the Texas Health and Safety Code. I have participated in and have initiated numerous federal and state investigations, both domestic and international, which have resulted in the arrest and conviction of individuals who have smuggled, received, and distributed controlled substances, as well as the seizure of illegal drugs and proceeds derived from the sale of those illegal drugs. I have also conducted numerous investigations targeting both local and national level gangs, involved in racketeering,

murders, drug trafficking, money laundering, and other crimes of violence typically associated with gang activity. I am familiar with the numerous gangs that are in and around the surrounding areas of Houston, Texas. I have testified in both federal and state judicial proceedings for violations of laws concerning controlled substances. I have been involved in various types of electronic surveillance, in the execution of federal and state search and arrest warrants, and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from controlled substance trafficking. I have received courses of instruction from the DEA relating to investigative techniques and the conducting of narcotics and financial investigations.

I am making this affidavit in support of a Criminal Complaint to be presented to the United States District Court, Southern District of Texas, Houston Division, establishing probable cause for the arrest of **Lalo Buddy PEREZ ("PEREZ")**, **Michael Anthony PATRAN ("PATRAN")**, **Pauline RIVAS ("RIVAS")**, and **Robert Ashleigh WHITTEN ("WHITTEN")** for Conspiracy to Possess with the Intent to Distribute 5 or More Kilograms of Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and for the Laundering of Monetary Instruments, in violation of 18 U.S.C. §§ 1956. I also allege that **PEREZ** and **PATRAN** Possessed a Firearm in Furtherance of a Crime of Violence or Drug Trafficking Crime, in violation of 18 U.S.C. §§ 924(c)(1)(A).

Since this affidavit is being submitted for the limited purpose of securing authorization for an arrest warrant, I have not included each and every known fact concerning the investigation. I have included only the facts that are believed to establish

the necessary foundation and probable cause for an arrest warrant. I have participated in the below investigation. As a result of my personal participation in this investigation, as well as interviews with and analysis of reports submitted by federal, state, and local officers, I am familiar with all aspects of this investigation. On the basis of this familiarity, I allege the following facts:

1. In August 2016, DEA agents debriefed a confidential source (hereinafter, "CS"). The CS has proven credible and reliable in past investigations and information provided by the CS has led to the seizure of multi-kilograms of cocaine, methamphetamine, marijuana, bulk United States Currency ("USC"), and the federal arrest and conviction of numerous individuals.

2. The CS advised that an individual he/she knew as "Michael Anthony" was distributing multi-kilograms of cocaine. The CS advised that "Michael Anthony" was approximately 28 years of age, drove a beige 2005 Toyota Camry bearing Texas license plate (TXLP) CDN-2366, and utilized cellular phone number (832) 306-6472. Based on this information, DEA agents were able to identify "Michael Anthony" as Michael Anthony **PATRAN**. DEA agents obtained a photograph of **PATRAN** from his Texas Driver's License #24177092. DEA agents showed the photograph of **PATRAN** to the CS and he/she positively identified **PATRAN** as "Michael Anthony."

3. On August 31, 2016, DEA agents debriefed the CS. The CS advised that he/she had information regarding a planned meeting between Alexander CASTELLANO, Narciso ALVAREZ, and **PATRAN**. The CS later contacted DEA agents and advised that CASTELLANO and ALVAREZ had met with **PATRAN** at 302 Avenue G, South

3

Houston, Texas. The CS advised that **PATRAN** had arrived in a black 2015 Cadillac Escalade bearing TXLP HHY-4519 (registered to Pauline **RIVAS**). The CS advised that **PATRAN** was riding with an unidentified Hispanic male known only to him/her as "Lalo." The CS advised that **PATRAN** and "Lalo" had brought five (5) kilograms of cocaine with them to the meeting. The CS advised that no transaction was made and **PATRAN** and "Lalo" departed with the five (5) kilograms of cocaine in the Cadillac Escalade.

4. DEA agents were able to locate "Lalo Perezz" as a friend on **PATRAN**'s Facebook account. DEA agents obtained a photograph of "Lalo Perezz" (Facebook.com/laylow.perez) and showed the photograph to the CS. The CS positively identified "Lalo Perezz" as "Lalo." DEA agents further observed on Facebook account "Lalo Perezz" a birthday of June 20, 1990. DEA agents contacted Immigration and Customs Enforcement (ICE) and requested that they run a database check on the name "Perez" with date of birth 06/20/1990. ICE agents located an individual by the name Lalo Buddy **PEREZ** with the same date of birth. DEA agents obtained a photograph of **PEREZ** from his Texas Driver's License #24444464. DEA agents showed the photograph of **PEREZ** to the CS and he/she positively identified **PEREZ** as "Lalo."

5. After **PATRAN** and **PEREZ** departed from the meeting, they traveled to 811 Ahrens St., Houston, TX. DEA agents, who responded once the CS notified agents of the five (5) kilograms of cocaine, located the Cadillac Escalade at 811 Ahrens St., Houston, TX. DEA agents observed **PEREZ** was the driver and **PATRAN** was the front seat passenger. The CS advised that the residence, 811 Ahrens St., Houston, TX, was the

4

residence of Ernesto ESCAMILLA who is a known and documented HOUSTONE TANGO BLAST gang member.

6. In September 2016, DEA agents debriefed the CS. The CS advised that **PATRAN** and **PEREZ** were negotiating a large cocaine transaction of approximately 60 kilograms of cocaine between CASTELLANO and unknown individuals from out of state. The CS was able to obtain multiple recorded phone calls to further corroborate this 60 kilogram transaction. On September 6, 2016, the CS contacted Special Agent (SA) Micheal Lumpkin and me and advised us that **PATRAN** had accumulated a large amount of USC. The CS advised that the money belonged to **PATRAN** and **PEREZ** and that **PATRAN** was counting the USC and getting it ready to be sent south to Mexico. The CS also advised that **PATRAN** was planning to meet with CASTELLANO again. On that same date, agents conducted surveillance on CASTELLANO and **PATRAN**. DEA agents observed CASTELLANO, who was observed driving a black 1999 Lincoln Navigator bearing TXLP DMM-4375, meet with **PATRAN** who was driving a red Scion xD bearing temporary license plate 81J4126, at the Kroger's parking lot, located at 6616 Farm to Market Road 1488 (FM-1488), Magnolia, TX. DEA agents followed CASTELLANO and **PATRAN** who drove in tandem, to the Chili's, located at 6603 FM-1488, Magnolia, TX. DEA agents were aware of this area as it was located closely (3.5 miles) to **PEREZ**' residence which was known to be 9743 Deer Path Lane, Magnolia, TX. DEA agents had obtained this information from Homeland Security Investigations (HSI) Houston Money Laundering Initiative (HMLI) who was currently working an

5

active investigation on **PEREZ** and his residence which was believed to be used to store narcotics and narcotic derived proceeds.

7.  DEA agents observed CASTELLANO and **PATRAN** enter the Chili's and then exit shortly afterwards. DEA agents observed CASTELLANO and **PATRAN** enter their respective vehicles and depart from the Chili's. DEA agents maintained surveillance on **PATRAN** and observed him travel directly to 9743 Deer Path Ln., Magnolia, TX, the known residence of **PEREZ**. At approximately 4:20 p.m., DEA agents observed **PATRAN** enter the aforementioned residence. At approximately 5:30 p.m., DEA agents observed a black Cadillac Escalade bearing TXLP HHY-4519 arrive at the residence and enter into the garage. At approximately 7:00 p.m., DEA agents observed the garage door open up and the Cadillac Escalade was observed exiting the garage and departing the residence. DEA and HSI agents maintained constant surveillance on the Cadillac Escalade as it traveled eastbound on FM-1488 and then southbound on Interstate-45 (North Freeway). During this time, I telephonically spoke with the CS who advised me that **PEREZ** and **PATRAN** were transporting a large amount of U.S. Currency. At this time, I notified surveillance agents of what the CS had told me and agents then contacted Harris County Sheriff's Office (HCSO) K-9 Deputy C.C. Sweeny. Deputy Sweeny was already with surveillance agents as it was anticipated that a marked police unit would be needed during this operation. Agents advised Deputy Sweeny that the Cadillac Escalade was possibly transporting a large amount of U.S. Currency believed to be proceeds from narcotic sales.

8. At approximately 7:33 p.m., Deputy Sweeny conducted a traffic stop on the Cadillac Escalade as it exited Greens Road from the North Freeway for Fail to Maintain a Single Marked Lane and Speeding 55mph in a 35mph zone, both violations of the Texas Transportation Code. The Cadillac Escalade came to a stop at Choice 1 Auto Sales, located at 12517 North Freeway. Deputy Sweeny made contact with the driver, identified as **PEREZ**, and the front seat passenger, identified as **PATRAN**. Deputy Sweeny advised **PEREZ** of the reason he stopped him. **PEREZ** acknowledged and advised that he wasn't paying attention because he was on his cell phone. Deputy Sweeny conducted his field interview with **PEREZ** and during this interview, observed **PEREZ** to be unusually and excessively nervous. Deputy Sweeny observed **PEREZ** to also be sweating profusely, abnormally for any normal or prudent person during a traffic stop. Based on the information Deputy Sweeny was given by DEA and HSI agents, in addition to **PEREZ'** unusually nervous demeanor, Deputy Sweeny had **PEREZ** step out of the vehicle for both officer safety reasons and investigative purposes. This is done due to the unknown factors (weapons) that are accompanied with the vehicle **PEREZ** was occupying as opposed to the known factors that are associated outside the vehicle. Deputy Sweeny then spoke with **PATRAN**. **PATRAN** advised that he possibly had a warrant out for his arrest. Deputy Sweeny checked **PATRAN** for warrants and observed he had an outstanding municipal warrant out of Harris County Precinct 8. Deputy Sweeny then placed **PATRAN** under arrest for the outstanding warrant.

9. Deputy Sweeny asked **PEREZ** for consent to search the Cadillac Escalade. **PEREZ** denied the consent. Deputy Sweeny advised **PEREZ** that he would conduct a

7

free air sniff of the Cadillac Escalade with his K-9 Mikey. K-9 Mikey was last certified on February 24, 2016, through the National Narcotic Detector Dogs Association (Certificate 49853) for the odors of marijuana, cocaine, heroin, methamphetamine, and MDMA. Deputy Sweeny, utilizing K-9 Mikey, conducted the free air sniff around the vehicle. K-9 Mikey gave a positive alert to the rear hatch of the Cadillac Escalade.

10. Deputy Sweeny then conducted a probable cause search of the Cadillac Escalade and located on the rear passenger seat a blue Puma gym bag that contained 20 individually wrapped packages of U.S. Currency. I know that U.S. Currency that is packaged in this type of fashion, wrapped in cellophane and duct tape, is that of narcotic derived proceeds and not typically how a normal person would transport legitimate currency. The K-9 alert was based on the money having retained the odor of the narcotics of which it was derived (sold) from. The K-9 is trained to not only detect narcotics, but more specifically the K-9 is trained to detect the actual odor of narcotics, hence why K-9 Mikey alerted on the large amount of drug derived proceeds. The official money count revealed it to be $237,475.00. Additionally, Deputy Sweeny located an AK-47 assault rifle in the rear cargo hatch area located in a factory made compartment. Deputy Sweeny also located a Walther P99 pistol located on the front passenger seat floorboard where **PATRAN** was sitting.

11. Concurrently, during this traffic stop, DEA and HSI agents maintained surveillance on the 9743 Deer Path Ln., Magnolia, TX. At approximately 8:30 p.m., agents observed a gold Dodge Ram 3500 bearing TXLP HMW-1868 arrive at the residence and enter the garage. At approximately 8:35 p.m. (5 minutes later), agents

8

observed the garage door open to the residence and the Dodge Ram depart from the residence. Agents maintained constant surveillance on the Dodge Ram as it traveled westbound on FM-1488 and stop at a Chevron gas station, located at 10940 FM-1488, Magnolia, TX. Montgomery County Sheriff's Office Deputy Ochoa approached the Dodge Ram based on the totality of the circumstances of all that had transpired. Deputy Ochoa consensually contacted the driver, identified as **WHITTEN**, who was sitting in the driver seat and sole occupant of the vehicle. During the consensual encounter, Deputy Ochoa smelled a strong odor of marijuana emitting from the Dodge Ram. **WHITTEN** voluntarily admitted that he had some marijuana on him. Deputy Ochoa attempted to detain **WHITTEN**, at which time **WHITTEN** took off running, evading arrest/detention. Deputies were able to catch **WHITTEN** and detained him. Deputy Ochoa conducted a probable cause search of the Dodge Ram based on the odor of marijuana and the statement by **WHITTEN** that marijuana was in the vehicle. Deputy Ochoa located a cooler that contained 18 kilograms of cocaine. The cocaine was field tested with a cocaine test kit and tested positive, indicating the presence of cocaine. Deputy Ochoa also located two duffel bags that contained a large amount of U.S. Currency in the back seat of the Dodge Ram. Deputy Ochoa also located marijuana joints in the center console. The official money count revealed it to be $666,638.00.

12. Again, DEA and HSI agents maintained constant surveillance on the residence. A few short minutes after **WHITTEN** departed, at 8:40 p.m., agents observed the red Scion xD depart from the residence. Agents followed the Scion xD as it traveled westbound on FM-1488. MCSO Deputy Rico Leverston initiated a traffic stop on the

Scion xD for Fail to Maintain a Single Marked Lane in the 11200 Block of FM-1488. Deputy Leverston identified the driver and sole occupant as **RIVAS**. Based on the totality of the circumstances, Deputy Leverston requested consent to search **RIVAS'** vehicle. **RIVAS** provided verbal consent. Deputy Leverston conducted a search and found a bulk amount of USC in **RIVAS'** purse. The official money count revealed it to be $6,500.00.

13. On the same date, at 10:32 p.m., the Honorable John R. Froeschner, United States Magistrate Judge for the Southern District of Texas, Galveston Division, authorized and signed a Search and Seizure Warrant for 9743 Deer Path Ln., Magnolia, TX. DEA and HSI agents executed the search warrant immediately thereafter. No other occupants were located inside the residence. During the search, agents located approximately 109 used kilogram wrappers, many of which still contained cocaine residue. Additionally, agents located a cocaine press which is used to compress cocaine into "kilogram bricks." Agents located within a back room, what can be described as a makeshift processing laboratory, which was used to cut and dilute the cocaine, repress the cocaine, and stamp the cocaine bricks. Agents further located a money counter and an additional $26,625.00 in USC. Agents also located seven firearms, to which are described as follows: Keltec KSG shogtun, Windham AR-15 assault rifle, Benelli shotgun, Bersa pistol, MSAR rifle, Micro Draco sub machinegun, and a Warrior revolver. Furthermore, agents seized a small amount of cocaine that was scattered throughout the residence mostly from the residue of the kilogram bricks of cocaine.

14. Resident Agent in Charge Michael Sanders and I interviewed **PEREZ**. **PEREZ** was read his Miranda Rights and he advised he understood them and waived his right to have an attorney present during questioning. **PEREZ** advised DEA agents that he had approximately $238,500.00 USC in his Cadillac Escalade. DEA agents advised **PEREZ** that officers had stopped a Dodge Ram (**WHITTEN**) that had left his residence and recovered a large amount of USC and cocaine. **PEREZ** stated that he had approximately 15 – 20 kilograms of cocaine and $500,000.00 USC at his residence. **PEREZ** stated he did not know who or why anyone would remove the cocaine and money from his residence other than the people he worked for. **PEREZ** stated when he was getting pulled over by law enforcement, he called the person he works for (unknown) and advised him that he was getting pulled over by police. **PEREZ** further stated that he sent a message to his mother (**RIVAS**) that he was getting pulled over by police.

15. Task Force Officer (TFO) Jesse Hernandez and I interviewed **WHITTEN**. **WHITTEN** was read his Miranda Rights and he advised he understood them and waived his right to have an attorney present during questioning. **WHITTEN** advised DEA agents that he received a phone call from Manuel CAVAZOS a/k/a "Meme" who advised him that **PEREZ** had been stopped by police and to call his (**PEREZ**') mother (**RIVAS**). **WHITTEN** advised that CAVAZOS provided him with **RIVAS**' cellular phone number, identified as (956) 254-6834. **WHITTEN** advised that he then immediately called **RIVAS** at the aforementioned phone number (7:59 p.m., 60 seconds). **WHITTEN** advised that **RIVAS** informed him that **PEREZ** had been stopped by police and she needed him to come to the house immediately to help her. **WHITTEN** advised he then

11

traveled to 9743 Deer Path Ln., Magnolia, TX. **WHITTEN** stated he received a phone call from **RIVAS** (8:09 p.m., 27 seconds) and she asked him where he was at and if he was on the way. **WHITTEN** stated he then received another phone call from **RIVAS** (8:26 p.m., 18 seconds) and she asked him if he was almost there. **WHITTEN** stated he advised **RIVAS** that he was about to pull up.

16. **WHITTEN** stated as he entered the driveway, **RIVAS** opened up the garage door for him. **WHITTEN** stated he entered the garage and observed a cooler and several bags lying on the ground. **WHITTEN** stated that **RIVAS** informed him to take everything with him because police had stopped **PEREZ**. **WHITTEN** stated that **RIVAS** placed the bags in the backseat of his truck and then helped him lift the cooler and also place it in the backseat of his truck. **WHITTEN** stated that **RIVAS** then instructed him to leave and she would call him. **WHITTEN** provided verbal consent to look at his phone and voluntarily unlocked the phone for agents. **WHITTEN** showed agents all of the aforementioned phone calls and the time and duration of each phone call. These times, which were listed in parenthesis in paragraph 15, above, corroborated with what was seen by agents during surveillance.

Based on the foregoing facts, **PEREZ**, **PATRAN**, **RIVAS**, and **WHITTEN** all conspired to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense 18 kilograms of cocaine HCL. Additionally, **PEREZ**, **PATRAN**, **RIVAS**, and **WHITTEN**, knowing that the property involved in a financial transaction ($937,238.00 in USC) represented the proceeds of some form of unlawful activity (drug trafficking), conducted or attempted to conduct such a financial transaction which in fact

involved the proceeds ($937,238.00 in USC) of specified unlawful activity (drug trafficking), to conceal or disguise the nature (remove from residence to thwart police), the location, the source, the ownership, or the control of the proceeds of specified unlawful activity (drug trafficking). Furthermore, **PEREZ** knowingly possessed[1] eight firearms (AK-47 assault rifle, Keltec KSG shogtun, Windham AR-15 assault rifle, Benelli shotgun, Bersa pistol, MSAR rifle, Micro Draco sub machinegun, and a Warrior revolver) in the furtherance of a drug trafficking crime (Conspiracy to Possess with Intent to Distribute Cocaine) and **PATRAN** knowing possessed one firearm (Walther P99 pistol) in the furtherance of a drug trafficking crime (Conspiracy to Possess with Intent to Distribute Cocaine).

I respectfully submit that probable cause exists to believe that **PEREZ**, **PATRAN**, **RIVAS**, and **WHITTEN** have committed a violation of Title 21 U.S.C. §§ 846, 841(a)(1), specifically, Conspiracy to Possess with the Intent to Distribute 5 Kilograms of Cocaine or More, a Schedule II Controlled Substance; Title 18 U.S.C. §§ 1956, specifically, Laundering of Monetary Instruments. I further submit that probable cause exists to believe that **PEREZ** and **PATRAN** have committed a violation of 18 U.S.C. §§ 924(c)(1)(A), specifically, Possession of a Firearm in the Furtherance of a Crime of Violence of Drug Trafficking Crime.

---

[1] A person "possesses" a firearm if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it. United States v. Thongsy, 577 F.3d 1036, 1043 n.5 (9th Cir.2009).
13

                                                Affiant
                                                James Emmerson
                                                Drug Enforcement Administration

Subscribed and sworn to before me in Galveston, Texas, this the 8th day of September, 2016, at ___ : ___ m, and I find probable cause.

                                                _____
                                                Honorable Nancy K. Johnson
                                                United States Magistrate Judge
                                                Southern District of Texas